WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lonnie Earl Hinkley, | No. CV-15-00633-PHX-ESW |
| Plaintiff, | |
| v. | **ORDER** |
| Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, | |
| Defendant. | |

Pending before the Court is Lonnie Earl Hinkley's ("Plaintiff") appeal of the Social Security Administration's ("Social Security") denial of his applications for disability insurance benefits and supplemental security income.  The Court has jurisdiction to decide Plaintiff's appeal pursuant to 42 U.S.C. §§ 405(g), 1383(c).  Under 42 U.S.C. § 405(g), the Court has the power to enter, based upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing.  Both parties have consented to the exercise of U.S. Magistrate Judge jurisdiction.  (Doc. 8).

After reviewing the Administrative Record ("A.R.") and the parties' briefing (Docs. 19, 32, 33),[1] the Court finds that the Administrative Law Judge's ("ALJ") decision contains harmful legal error.  For the reasons explained in Section II below, the decision is reversed and the case is remanded to the Commissioner of Social Security for further proceedings.

## I. LEGAL STANDARDS

### A.  Disability Analysis:  Five-Step Evaluation

The Social Security Act (the "Act") provides for disability insurance benefits to those who have contributed to the Social Security program and who suffer from a physical or mental disability.  42 U.S.C. § 423(a)(1).  The Act also provides for supplemental security income to certain individuals who are aged 65 or older, blind, or disabled and have limited income.  42 U.S.C. § 1382.  To be eligible for benefits based on an alleged disability, the claimant must show that he or she suffers from a medically determinable physical or mental impairment that prohibits him or her from engaging in any substantial gainful activity.  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(A)(3)(A).  The claimant must also show that the impairment is expected to cause death or last for a continuous period of at least 12 months.  *Id.*

To decide if a claimant is entitled to Social Security benefits, an ALJ conducts an analysis consisting of five questions, which are considered in sequential steps.  20 C.F.R. §§ 404.1520(a), 416.920(a).  The claimant has the burden of proof regarding the first four steps:[2]

> **Step One**:  Is the claimant engaged in "substantial gainful activity"?  If so, the analysis ends and disability benefits are denied.  Otherwise, the ALJ proceeds to step two.

---

[1] LRCiv 7.1(b)(1) requires all original documents filed with the Clerk of Court to be in a "fixed-pitch type size no smaller than ten (10) pitch (10 letters per inch) or in a proportional font size no smaller than 13 point, including footnotes."  Compliance with LRCiv 7.1(b)(1) helps ensure that filings may be easily read by the Court and all parties.

[2] *Parra v. Astrue*, 481 F.3d 742,746 (9th Cir. 2007).

**Step Two:** Does the claimant have a medically severe impairment or combination of impairments? A severe impairment is one which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied at this step. Otherwise, the ALJ proceeds to step three.

**Step Three:** Is the impairment equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity? 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step of the analysis.

**Step Four:** Does the impairment prevent the claimant from performing work which the claimant performed in the past? If not, the claimant is "not disabled" and disability benefits are denied without continuing the analysis. 20 C.F.R. §§ 404.1520(f), 416.920(f). Otherwise, the ALJ proceeds to the last step.

If the analysis proceeds to the final question, the burden of proof shifts to the Commissioner:[3]

**Step Five:** Can the claimant perform other work in the national economy in light of his or her age, education, and work experience? The claimant is entitled to disability benefits only if he or she is unable to perform other work. 20 C.F.R. §§ 404.1520(g), 416.920(g). Social Security is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's residual functional capacity, age, education, and work experience. *Id.*

---

[3] *Parra*, 481 F.3d at 746.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.  Standard of Review Applicable to ALJ's Determination**

The Court must affirm an ALJ's decision if it is supported by substantial evidence and is based on correct legal standards.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990).  "Substantial evidence" is less than a preponderance, but more than a "mere scintilla."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)).  It is relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Id*.

In determining whether substantial evidence supports the ALJ's decision, the Court considers the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusions.  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993).  If there is sufficient evidence to support the ALJ's determination, the Court cannot substitute its own determination.  *See Morgan v. Comm'r of the Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ, not the Court, is responsible for resolving conflicts and ambiguities in the evidence and determining credibility.  *Magallanes*, 881 F.2d at 750; *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Finally, the Court considers the harmless error doctrine when reviewing an ALJ's decision.  An ALJ's decision need not be remanded or reversed if it is clear from the record that the error is "inconsequential to the ultimate nondisability determination."  *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008) (citations omitted); *Molina*, 674 F.3d at 1115 (an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion") (citations omitted).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.  PLAINTIFF'S APPEAL

### A.  Procedural Background

Plaintiff, who was born in 1976, has been employed as a fork lift operator, hand packer, general hardware sales, and lumber yard worker.  (A.R. 29).  In 2011, Plaintiff filed applications for disability insurance benefits and supplemental security income.  (A.R. 187-99).  Plaintiff's applications alleged that on July 12, 2011, he became unable to work due to Chiari 1 malformation and deep vein thrombosis.  (A.R. 58, 71).  Social Security denied the applications on June 28, 2012.  (A.R. 116-23).  In December 2012, upon Plaintiff's request for reconsideration, Social Security affirmed the denial of benefits.  (A.R. 126-32).  Plaintiff sought further review by an ALJ, who conducted a hearing in June 2013.  (A.R. 38-57).  In her September 10, 2013 decision, the ALJ found that Plaintiff has not been under a disability from July 12, 2011 through the date of the decision.  (A.R. 10-37).

Plaintiff appealed the ALJ's ruling.  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Social Security Commissioner.  (A.R. 1-6).  On April 8, 2015, Plaintiff filed a Complaint (Doc. 1) pursuant to 42 U.S.C. § 405(g) requesting judicial review and reversal of the ALJ's decision.

### B.  The ALJ's Application of the Five-Step Disability Analysis

#### 1.  Step One: Engagement in "Substantial Gainful Activity"

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since July 12, 2011, the alleged onset date.  (A.R. 15).  Neither party disputes this determination.

#### 2.  Step Two: Presence of Medically Severe Impairment/Combination of Impairments

The ALJ found that Plaintiff has the following severe impairments: (i) obesity; (ii) Chiari I malformation status post April 2012 surgery; (iii) history of deep venous thrombosis of the left lower extremity; (iv) cognitive disorder, not otherwise specified;

and (v) adjustment disorder with anxiety and depressed mood.   (A.R. 16).   This determination is undisputed.

### 3. Step Three: Presence of Listed Impairment(s)

The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Social Security regulations.   (A.R. 17).   Neither party disputes the ALJ's determination at this step.

### 4. Step Four:  Capacity to Perform Past Relevant Work

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that:

> [Plaintiff] can never climb ladders, ropes, or scaffolds, but he can climb ramps or stairs frequently.   He can balance occasionally, and stoop, crouch, kneel, and crawl frequently. He is to avoid even moderate exposure to dangerous machinery and unprotected heights.   He is limited to simple, routine, and repetitive tasks.

(A.R. 19).   Based on Plaintiff's RFC, the ALJ determined that Plaintiff was unable to perform his past relevant work.   (A.R. 28-29).   Plaintiff argues that the ALJ improperly weighed the evidence in assessing Plaintiff's RFC.

### 5. Step Five: Capacity to Perform Other Work

By relying on the Medical-Vocational Guidelines, the ALJ determined that Plaintiff can perform other jobs existing in significant numbers in the national economy. (A.R. 29-30).  Plaintiff challenges this determination.

### C. Summary of Plaintiff's Medical History Beginning with July 2011 Diagnosis of Chiari 1 Malformation through Six Months Post Craniectomy

On July 12, 2011, Plaintiff visited Norterra Family Medicine for a pounding, "knife-like" headache.   (A.R. 331).   Plaintiff, who denied having significant prior headaches, also had nausea, chest pain, dizziness, racing heartbeat, and swelling.   (*Id*.). The examining physician's assistant referred Plaintiff to the Banner Thunderbird emergency room.   (A.R. 332).

Plaintiff presented at the Banner Thunderbird emergency room, where staff performed a computed tomography ("CT") scan of Plaintiff's head. (A.R. 337). The attending physician reported no evidence of acute hemorrhage, infarction, mass, mass-effect, herniation, or hydrocephalus, but found questionable cerebellar tonsillar ectopia. (A.R. 338). Neurosurgeon Randall W. Porter, M.D. recommended a magnetic resonance imaging ("MRI") of Plaintiff's brain. (*Id*.). Plaintiff was discharged from Banner Thunderbird with diagnoses of headache and cerebellar tonsillar ectopia and with instruction to follow up with Dr. Porter. (*Id*.).

Plaintiff's brain MRI was performed on July 15, 2011. (A.R. 347). The neuroradiologist's report states: "Normal to-and-fro flow in front of the spinal cord and brainstem at the foramen magnum at the level of the cerebellar tonsils. No to-and-fro flow is seen behind the spinal cord at this level." (*Id*.). In other words, the MRI showed blockage behind Plaintiff's cerebellum. (A.R. 518).

On September 26, 2011, Dr. Porter examined Plaintiff. (A.R. 381-84). Plaintiff reported pain behind his eyes and pain radiating behind his right ear to his shoulder. (A.R. 381). Dr. Porter noted that Plaintiff has had epidurals and an occipital nerve block, but "nothing has taken the pressure away." (*Id*.). Dr. Porter reviewed the radiographic images of Plaintiff's brain, and found "Chiari 1 malformation, no flow behind the cerebellum." (A.R. 384). Dr. Porter's treatment plan was to perform a "suboccipital decompression with C1 laminectomy, pencranial graft." (*Id*.).

On October 4, 2011, Plaintiff went to the emergency room for pain in his left leg. The attending physician diagnosed Plaintiff with deep vein thrombosis. (A.R. 391, 401). Surgical plans to treat Plaintiff's Chiari 1 obstruction were placed on hold until the thrombosis resolved. (A.R. 404). In an October 26, 2011 follow up appointment, Plaintiff reported continued swelling and pain in his left leg. (A.R. 408). The record also indicated that Plaintiff had "vision problems due to chiari." (*Id*.). A November 2, 2011 examination revealed sonographic evidence for lower extremity deep vein thrombosis.

(A.R. 506).  In a December 14, 2011 letter, Dr. Porter wrote that the symptoms Plaintiff experiences with the Chiari malformation prevented Plaintiff from working.  (A.R. 329).

A January 27, 2012 medical record indicates that Plaintiff's thrombosis resolved.  (A.R. 500).  In a March 5, 2012 report, Dr. Porter indicated that Plaintiff was "cleared for surgery by Hemotology."  (A.R. 516).  Dr. Porter stated that Plaintiff's "symptoms are the same, complains more, pain higher in the base of the skull, down the right side, a lot of stiffness in the neck.  His eyes quiver at times."  (*Id*.).  Plaintiff's surgery was performed on April 3, 2012 with no complications.  (A.R. 546-47).  Notes from Plaintiff's post-operative examination on April 19, 2012 stated that Plaintiff "continues to report dizziness, and his eyes moving, while supine.  He is using a cane to ambulate.  His primary pain is located on the right side of his head, near his pin sites."  (A.R. 540).

On June 11, 2012, Plaintiff went to his six-week post-operative visit with Dr. Porter.  (A.R. 562-65).  Plaintiff reported that he is "about the same" and continues to have neck stiffness.  (A.R. 562).  Plaintiff indicated that his pain is located in his neck and the right side of his scalp and is "like an ice cream headache."  (*Id*.).  Dr. Porter noted that Plaintiff has short term memory loss, but is no longer using a cane and his eye pressure is gone.  (*Id*.).  Plaintiff stated that he started physical therapy, but can only tolerate one day a week.  (*Id*.).  Dr. Porter assessed that Plaintiff's post-operative status is stable with "some headaches and numbness."  (A.R. 565).

Plaintiff's next visit with Dr. Porter occurred on October 15, 2012.  (A.R.  598).  Dr. Porter indicated that Plaintiff's post-operative status remains stable, but Plaintiff "has problems with balance, headaches, and confusion.  His symptoms are daily.  When he lays down, his eyes bother him and they feel like they are moving.  He gets lost in familiar places."  (*Id*.).  Dr. Porter's report  also stated "Chiari 1 malformation, no flow behind the cerebellum on cine MRI."  (*Id*.).  In the "Headache Questionnaire for the Treating Physician" completed on October 15, 2012, Dr. Porter stated that Plaintiff has daily Chiari headaches that affect Plaintiff's concentration, attention, memory, and capacity to work.  (A.R. 283).  Dr. Porter opined that the headaches would result in

Plaintiff missing an average of five days from work per month.  (*Id.*).  The vocational expert testified at the administrative hearing that there are no jobs available that Plaintiff could perform if Plaintiff's condition required him to miss five days of work a month.  (A.R. 55).

### D. The ALJ Improperly Weighed the Opinions of Non-Examining Physician Dr. Lloyd Anderson and Treating Neurosurgeon Dr. Randall Porter

In weighing medical source opinions in Social Security cases, there are three categories of physicians: (i) treating physicians, who actually treat the claimant; (ii) examining physicians, who examine but do not treat the claimant; and (iii) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  An ALJ must provide clear and convincing reasons that are supported by substantial evidence for rejecting the uncontradicted opinion of a treating or examining doctor. *Id.* at 830-31; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  An ALJ cannot reject a treating or examining physician's opinion in favor of another physician's opinion without first providing specific and legitimate reasons that are supported by substantial evidence. *Bayliss*, 427 F.3d at 1216; 20 C.F.R. § 404.1527(c)(4) (an ALJ must consider whether an opinion is consistent with the record as a whole); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tommasetti*, 533 F.3d at 1041 (finding it not improper for an ALJ to reject a treating physician's opinion that is inconsistent with the record).

### 1. Non-Examining Physician Dr. Lloyd Anderson

On June 27, 2012, state agency physician Dr. Lloyd Anderson reviewed Plaintiff's medical records to assess Plaintiff's RFC.  (A.R. 66-70; 79-83).  Dr. Anderson stated that the RFC assessment was for July 12, 2012— twelve months after the alleged onset date.  (A.R. 66, 79).   Dr. Anderson assessed a prospective RFC for light work, and explained that:

> [Plaintiff] had "severe [headaches] and balance problems which were found after his [alleged onset date] to be due to a

Chiari I malformation.   While waiting for surgical decompression he developed a [deep vein thrombosis] which delayed the operation until 04/03/2012.   The [deep vein thrombosis] resolved.   Since then he is progressively improving.   It is projected that [Plaintiff] will be at or better than this light RFC by 12 months after [the alleged onset date], 07/11/2012.   Currently he i[s] ambulatory without an [assistive device] but has some balance issues, i.e. he has a positive Romberg and he is unable to tandem walk but also temporarily remains on narcotic pain meds.

(A.R. 67, 80).   Dr. Anderson implicitly found Plaintiff's impairments disabling, but did not find that the impairments would remain disabling for twelve consecutive months as is required for an award of benefits.[4]   Without addressing the prospective nature of Dr. Anderson's RFC assessment, the ALJ stated that:

[T]he assessment of [Dr. Anderson] on initial review is given great weight.   It was determined [that Plaintiff] could perform work at the light exertional level . . . .   The medical consultant had the benefit of reviewing the record and is familiar with the requirements for determining disability pursuant to the rules and regulations of the Social Security Act.   Moreover, the assessment is consistent with the medical evidence of record, which demonstrated [Plaintiff's] condition generally improved with treatment.   Additionally, it appears the medical consultant adequately considered [Plaintiff's] subjective symptoms and limitations, including dizziness, balance issues, and obesity, in assessing [Plaintiff's] residual functional capacity.

(A.R. 24).   The ALJ's decision does not discuss what evidence demonstrated that Plaintiff's condition improved within twelve months from the alleged onset date as Dr. Anderson projected.   Nor does the ALJ's decision discuss how the medical improvement would allow Plaintiff to return to work.   The Court cannot speculate as to the grounds for an ALJ's conclusion.   *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) ("we cannot substitute our conclusions for the ALJ's, or speculate as to the grounds for

---

[4] The Personalized Decision Notice states: "After reviewing all the available medical evidence, we have determined that your condition is disabling but will not remain disabling for 12 consecutive months."   (A.R. 117, 121) (emphasis added).

the ALJ's conclusions.  Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence") (quoting *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1103 (9th Cir. 2014)).

Moreover, the ALJ's decision does not acknowledge that Dr. Anderson's assessment was based on a limited review of Plaintiff's medical records.  Dr. Anderson did not review Dr. Porter's October 2012 records indicating that Plaintiff continued to have daily problems with balance, headaches, and confusion.  (A.R. 598)  Nor did Dr. Anderson review Dr. Porter's opinion that Plaintiff's daily severe headaches would cause Plaintiff to miss an average of five days of work a month.  (A.R. 283).

Based on the record, the Court finds that the ALJ erred by giving great weight to Dr. Anderson's prospective RFC assessment.

### 2.  Treating Neurosurgeon Dr. Randall Porter

The parties dispute whether Dr. Porter's opinions are contradicted by Dr. Anderson's RFC assessment.  The Court does not need to decide the issue, however, as the ALJ has provided neither "clear and convincing" nor "specific and legitimate" reasons for discounting Dr. Porter's opinions expressed in his December 14, 2011 letter and October 15, 2012 Headache Questionnaire.

### i.  Dr. Porter's December 2011 Letter

On December 14, 2011, Dr. Porter wrote that Plaintiff "has been unable to work since July 12, 2011, because of the symptoms he is experiencing with the Chiari malformation."  (A.R. 329).  The ALJ gave this statement little weight, finding that the "conclusion[] [has] no probative value in determining the claimant's residual functional capacity.  As an opinion on an issue reserved to the Commissioner, this statement is not entitled to controlling weight and is not given special significance pursuant to 20 CFR 404.1527(e) and 416.927(e) and SSR 96-5."  (A.R. 25)  However, SSR 96-5p requires "[Social Security's] adjudicators [to] always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner."

Soc. Sec. Ruling SSR 96–5p, 1996 WL 374183, at * 2 (July 2, 1996).  Thus, "the fact that the treating physician's opinion was on an issue reserved for the Commissioner is not by itself a reason for rejecting that opinion."  *Esparza v. Colvin*, 631 F. App'x 460, 462 (9th Cir. 2015) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1202-03 (9th Cir. 2011).

The ALJ also gave Dr. Porter's December 2011 letter little weight because "it appears these statements were prepared for the claimant's benefit for his request for short term disability (Exhibit 5F, pp 1-2)."  This is neither a "clear and convincing" nor a "specific and legitimate" reason for discounting Dr. Porter's statement.  *See Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002) (an "ALJ may not disregard a physician's medical opinion simply because it was initially elicited in a workers' compensation proceeding, or because it was couched in the terminology used in such proceedings")  (citing *Coria v. Heckler*, 750 F.2d 245, 247–48 (3d Cir. 1984)).

Finally, the ALJ stated that Dr. Porter's December 2011 letter did not provide any specific functional limitations that prevented the claimant from working.  Dr. Porter diagnosed Plaintiff with Chiari 1 malformation and found that the condition warranted surgical intervention.  By opining that Plaintiff was unable to work, Dr. Porter implicitly found that Plaintiff's symptoms related to his diagnosis are significant and severe.  The lack of specific functional limitations is not a valid reason for discounting Dr. Porter's opinion regarding the severity of Plaintiff's condition.

For the above reasons, the Court finds that the ALJ has failed to give valid reasons for discounting Dr. Porter's opinion in the December 2011 letter.

### ii.  Dr. Porter's October 2012 Headache Questionnaire

The ALJ gave little weight to the opinions expressed in Dr. Porter's Headache Questionnaire for the following reasons:

1.  The ALJ found that Dr. Porter's "opinion is conclusory and did not provide an explanation for the assessment or describe the extent the headaches would affect the claimant."  (A.R. 24).  However, Dr. Porter is Plaintiff's treating neurosurgeon and has significant experience with Plaintiff's condition.  Dr. Porter's Headache Questionnaire

was completed on the same day that Dr. Porter conducted his six-month post-operative examination of Plaintiff.  The notes from Dr. Porter's October 2012 examination are consistent with the opinions expressed in the Headache Questionnaire.  Further, the opinions in the Headache Questionnaire are supported by Dr. Porter's prior examination reports.  In this circumstance, the ALJ's rejection of the Headache Questionnaire because it was "conclusory" is legally improper.  *See Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014) (finding that ALJ committed "a variety of egregious and important errors," including failing to "to recognize that the opinions expressed in check-box form in the February 2008 RFC Questionnaire were based on significant experience with Garrison and supported by numerous records, and were therefore entitled to weight that an otherwise unsupported and unexplained check-box form would not merit").

2.  In discussing why Dr. Porter's opinion was given little weight, the ALJ stated: "Moreover, Dr. Porter did not provide any specific work limitations as required by SSR 96-8p despite indicating [Plaintiff's] work capacity would be affected."  (A.R. 24).  SSR 96-8p is a policy interpretation ruling pertaining to RFC assessments made by Social Security, which provides that:

> The adjudicator must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC.  Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone.

Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *5 (July 2, 1996).

Dr. Porter indicated in the Headache Questionnaire that Plaintiff's headaches would affect Plaintiff's concentration, attention, and memory.  (A.R. 283).  To the extent the ALJ cited SSR 96-8p as a reason for discounting Dr. Porter's opinion, the reason is neither "clear and convincing" nor "specific and legitimate."

3.   The ALJ next stated that Dr. Porter's "opinion is not supported by his own objective findings, which were generally normal except for a slightly off gait, positive Romberg's sign, and an inability to do heal to toe walking (Exhibits 16F and 26F)." (A.R. 24).  Exhibit 26F contains Dr. Porter's records from 2013.  Because those records post-date Dr. Porter's 2012 opinion, they are an insufficient sole basis for denying benefits for the entire adjudicatory period.[5]

Exhibit 16F contains Dr. Porter's medical records from October 15, 2012 and June 11, 2012.  Those records are not inconsistent with Dr. Porter's opinion that Plaintiff's headaches would cause Plaintiff to miss an average of five work days a month.  For instance, on June 11, 2012, Dr. Porter reported that Plaintiff has some headaches and numbness, and Dr. Porter prescribed hydrocodone-acetaminophen.  (A.R. 580).

Further, by stating that Dr. Porter's "opinion is not supported by his own objective findings," the ALJ misconstrues the record.  Dr. Porter ordered a MRI of Plaintiff's brain, which showed a Chiari 1 malformation blocking the flow of cerebral fluid behind Plaintiff's spinal cord.  (A.R. 347).  Plaintiff consistently reported to Dr. Porter and other medical providers the existence of severe headaches.  Dr. Porter stated that the headaches are "Chiari" headaches.  (A.R. 283).  The ALJ's third reason for discounting Dr. Porter's opinion is neither "clear and convincing" nor "specific and legitimate."

4.   As an additional reason for discounting Dr. Porter's opinion, the ALJ states that Dr. Porter's findings regarding Plaintiff's balance and walking abilities are "inconsistent with [Plaintiff's] reports of his activities, including walking and exercising with weights." (A.R. 24).  But Dr. Porter opined in October 2012 that Plaintiff's headaches would cause Plaintiff to miss a significant amount of work.  Although Dr. Porter reported issues with Plaintiff's gait and balance, Dr. Porter did not opine that Plaintiff was unable to walk or exercise.  The Ninth Circuit has clearly instructed that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.  *Reddick*,

---

[5] As discussed below, Social Security may award benefits for a closed period of time.

157 F.3d at 722.  The ALJ's fourth reason for discounting Dr. Porter's Headache Questionnaire does not satisfy the "clear and convincing" or "specific and legitimate" standard.

5.  The ALJ's final reason for giving Dr. Porter's October 2012 opinion little weight is that "the intensity of the pain and frequency of the headaches are necessarily based on [Plaintiff's] own subjective statements and are not substantiated by the objective medical evidence."  (A.R. 24).  The records show that Plaintiff consistently reported severe headaches, beginning with the July 2011 office visit that resulted in Plaintiff being referred to the emergency room.  (A.R. 331).  A subsequent MRI revealed a blockage of cerebral fluid behind Plaintiff's spinal cord.  (A.R. 347).  The condition warranted surgery.  (A.R. 384).  To reiterate, Dr. Porter stated that Plaintiff's headaches were related to Plaintiff's Chiari 1 malformation.  (A.R. 283).  Dr. Anderson's opinion acknowledged that medical records show that Plaintiff had severe headaches due to a Chiari 1 malformation.  (A.R. 67, 80).  By giving great weight to Dr. Anderson's opinion while discounting Dr. Porter's opinion regarding Plaintiff's alleged headaches, the ALJ's decision is inconsistent.  The ALJ's final reason for giving Dr. Porter's opinion little weight is neither "clear and convincing" nor "specific and legitimate."

For the above reasons, the Court finds that the ALJ improperly discounted Dr. Porter's opinions expressed in the October 2012 Headache Questionnaire.  The ALJ's errors identified in this Order are not inconsequential and alone require remand.  The Court does not address the other issues raised in Plaintiff's Opening Brief.

**D.  Remand for Further Proceedings is Appropriate**

Ninth Circuit jurisprudence "requires remand for further proceedings in all but the rarest cases."  *Treichler*, 775 F.3d at 1101 n.5.  The Ninth Circuit, however, has adopted a test to determine when a case should be remanded for payment of benefits in cases where an ALJ has improperly rejected claimant testimony or medical opinion evidence.  *Id.* at 1100-01; *Garrison*, 759 F.3d at 1020.  This test is commonly referred to as the "credit-as-true" rule, which consists of the following three factors:

1. Has the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion? *Treichler*, 775 F.3d at 1100-01.

2. Has the record been fully developed, are there outstanding issues that must be resolved before a disability determination can be made, or would further administrative proceedings be useful? *Id.* at 1101. To clarify this factor, the Ninth Circuit has stated that "[w]here there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Id.*

3. If the improperly discredited evidence were credited as true, would the ALJ be required to find the claimant disabled on remand? *Id.*; *Garrison*, 759 F.3d at 1020.

Where a court has found that a claimant has failed to satisfy one of the factors of the credit-as-true rule, the court does not need to address the remaining factors. *Treichler*, 775 F.3d at 1107 (declining to address final step of the rule after determining that the claimant has failed to satisfy the second step). Moreover, even if all three factors are met, a court retains the discretion to remand a case for additional evidence or to award benefits. *Id.* at 1101-02. A court may remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1021. In *Treichler*, the Ninth Circuit noted that "[w]here an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." 775 F.3d at 1105.

Here, the ALJ improperly weighed Dr. Porter's 2011 and 2012 opinions. If Dr. Porter's opinions were credited-as-true, the ALJ would be required to find Plaintiff disabled at least for a closed period of time.[6] However, the record raises crucial

---

[6] "In a 'closed period' case, the decision maker determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision." *Shepherd v. Apfel*, 184 F.3d 1196, 1199 n.2 (10th Cir. 1999) (quoting *Pickett v. Bowen*, 833 F.2d 288, 289 n.1 (11th Cir. 1987).

- 16 -

1    questions as to whether medical improvement has occurred after Dr. Porter's October

2    2012 opinion that would allow Plaintiff to engage in substantial gainful activity.  For

3    instance, a MRI of Plaintiff's brain was performed on February 15, 2013.  (A.R. 677).

4    The neuroradiologist's findings showed improvement since the July 15, 2011 MRI.  The

5    July 15, 2011 MRI showed that the "cerebellar tonsils are low-lying and have a pointed

6    configuration," while the February 15, 2013 MRI showed that the "cerebellar tonsils are

7    in appropriate position."  (A.R. 348, 677).  A cineradiography MRI ("cine MRI") also

8    was performed on February 15, 2013.  (A.R. 679).  The neuroradiologist's findings stated

9    that "[f]rom prior exam, there has been suboccipital decompression . . . ."  (*Id.*).

10          On March 11, 2013, Dr. Porter reviewed the MRI and cine MRI, and found that

11   the "MRI showed a good pouch of [cerebrospinal fluid] under the cerebellum, but CINE

12   MRI did not show flow.  This does not correlate, I think it is technical in nature.  Re-

13   exploration of the Chiari decompression is not indicated at this time."  (A.R. 675).

14          The record contains other evidence suggesting that medical improvement has

15   occurred.  For example, on February 15, 2013, Plaintiff reported to Dr. Andrew Gorman

16   that "he is improved by about 40-50%" since his April 2012 surgery.  (A.R. 670).  Dr.

17   Gorman's report also states:

18                [Plaintiff] still experiences confusion, memory loss, balance
                 problem, focus problems.  He is also more short tempered and
19               angry.  He still has stiffness in his neck which <u>helps with
                 physical therapy</u>.  He is also experiencing twitching in the left
20               eye.  His symptoms were all present prior to his surgery, but
21               <u>are improved now</u> but not completely resolved.

22   (A.R. 670) (emphasis added).[7]   Whether the improvement Plaintiff has experienced

23   would allow Plaintiff to return to work is a question of fact that should be resolved by the

24   _____

25          [7] The ALJ gave little weight to Dr. Gorman's February 20, 2013 Medical
     Assessment.  Plaintiff does not challenge the weight given to the Medical Assessment.
26   The issue is deemed waived.  *See Bray v. Commissioner of Social Security Admin*, 554
     F.3d 1219, 1226 n.7 (9th Cir. 2009) (deeming argument not made in disability claimant's
27   Opening Brief waived); *see also Oberg v. Astrue*, 472 F. App'x 488, 490 (9th Cir. 2012).
     (A.R. 667-69).  The Court does not find that manifest injustice would occur in deeming
28   the argument waived.  *See Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (failure
     to comply with waiver rule is only excused when necessary to avoid manifest injustice).

1
2
3
4
5
6
7
8
9

ALJ.  *See Treichler*, 775 F.3d at 1101 ("Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate."); *Howell v. Astrue*, 248 F. App'x 797, 800-01 (9th Cir. 2007) (finding it clear that claimant was disabled at some point before her date last insured, but that it was not clear whether the claimant was entitled to ongoing disability benefits or to benefits for a "closed" period of disability and remanding to Social Security for further proceedings);  *Brown-Hunter*, 806 F.3d at 496 (finding that a significant factual conflict in the record "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance").

10
11
12
13

Applying the credit-as-true rule, the Court will remand the case to the Commissioner for an award of benefits beginning on July 11, 2011 (the onset date).  The ALJ shall reevaluate the medical evidence to determine whether the award of benefits should be for a closed period or should be continuing.

14
15
16
17
18
19
20
21

If the ALJ awards Plaintiff benefits for a closed period, the end date shall be no earlier than February 15, 2013 (the date of the MRI showing improvement in Plaintiff's brain).  If benefits are awarded for a closed period, the ALJ shall use the sequential analyses set forth in 20 C.F.R. § 404.1594(f) and 20 C.F.R. § 416.994(b)(5) in determining whether to terminate benefits due to medical improvement.[8]  The ALJ is cautioned that in performing the analyses, "an ALJ may not move to the evaluation of a claimant's RFC without first finding medical improvement, and the Act does not

22
23
24
25
26
27
28

---

[8] The sequential analysis applies to "closed period" cases.  *See Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011) ("Before limiting benefits to a closed period, an ALJ must conclude either that a claimant experienced 'medical improvement' as evidenced by changes in the symptoms, signs, or test results associated with her impairments, or else that an exception to this rule applies. . . . That determination is informed by an eight-step evaluation . . . .") (citing 20 C.F.R. § 404.1594(f)); *Newbold v. Colvin*, 718 F.3d 1257 (10th Cir. 2013) (medical improvement standard and sequential analysis set forth in 20 C.F.R. § 404.1594 applies to closed period cases); *Mendoza v. Apfel*, 88 F. Supp. 2d 1108, 1113 (C.D. Cal. 2000) (concluding that the medical improvement standard applies to cases involving a closed period of disability); *Dolbow v. Astrue*,  799 F. Supp. 2d 319, 326 (D. Del. 2011) (in determining whether disability is limited to a closed period, "the ALJ must follow an eight-step evaluation process codified in 20 C.F.R. § 404.1594").

1
2
3
4
5
6
7
8

authorize an ALJ to find medical improvement without making the comparison of prior and current medical evidence."  *Medina v. Colvin*, No. 14-cv-01967-DMR, 2015 WL 5448498, at * 12 (N.D. Cal. Aug. 21, 2015); *Osborn v. Barnhart*, No. 03M–2529, 2004 WL 2091480, at *2 (D. Colo. Aug. 6, 2004) ("While earlier medical records are in the file and the ALJ said that he gave careful consideration to all the evidence, he did not say how he compared the symptoms, signs and laboratory findings, in those earlier records with the later reports . . . . [Thus] [t]he ALJ's analysis was improper under the law and the decision therefore must be reversed for legal error.").

9
10
11
12
13
14
15
16
17
18

The ALJ shall abide by all other applicable regulations in determining whether there has been medical improvement that has restored Plaintiff's ability to engage in substantial gainful activity.  *See* 42 U.S.C. § 423(f)(1); 20 C.F.R. §§ 404.1594, 416.994. For instance, "medical improvement" means "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled."  20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i).  "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the claimant's] impairment(s) (see § 404.1528)[9]."  20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i).

19
20
21
22
23
24
25

It has been almost five years since Plaintiff filed his applications seeking benefits. To prevent further delay, the Court will require the ALJ to hold an administrative hearing within 120 days from the date of this Order to determine whether Plaintiff's disability is continuing.  *See Butts v. Barnhart*, 416 F.3d 101, 103-06 (2d Cir. 2005) (affirming imposition of time limits for a decision on the remand of the plaintiff's disability claim for further proceedings); *Barnett v. Bowen*, 794 F.2d 17, 22 (2d Cir. 1986) (injunctive

26
27
28

[9] "Symptoms," "signs," and "laboratory findings" are defined in 20 C.F.R. §§ 404.1528, 416.928.  "Symptoms" are the claimant's own description of his or her physical or mental impairment.  "Signs" are anatomical, physiological, or psychological abnormalities which can be observed, apart from the claimant's symptoms.  "Laboratory findings" are anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques.

relief is an appropriate remedy for individual social security cases involving unreasonable delays, despite the fact that absolute periods of limitations applicable to all claims are invalid); *Barbour v. Astrue*, 950 F. Supp. 2d 480, 491 (E.D.N.Y. 2013) ("As it has been more than seven years since the plaintiff filed his initial application for benefits, a time limit is appropriate in this case to prevent undue delay."); *Guzzi v. Heckler*, 617 F. Supp. 916, 917 (D. Fla. 1985) ("although it is clearly not within the province of this Court's powers to mandate across the board time limits by which the SSA must abide, it is within this Court's power to direct the Office of Hearings and Appeals to give the plaintiff in this case a de novo hearing within one hundred and twenty days from the date of this Order" and, if a hearing is not commenced within one hundred twenty days from the date of this Order, to issue an Order to Show Cause why the Commissioner should not be held in contempt); *Rowland v. Barnhart*, 2002 WL 31103231, at *1-3 (D. Kan. Sep. 18, 2002) (finding that the Court has the authority to order a time limit upon remand in a social security case); *White v. Shalala*, 1993 WL 498025, at *1 (E.D. Pa. Nov. 24, 1993) (district court did not err in imposing a time limit on the remand in a case where the Commissioner created an unreasonable delay in adjudicating the plaintiff's disability claim by failing to consider available relevant evidence at the Appeals Council stage); *see also* HALLEX 1–2–1–55.D.2 (articulating agency procedures following a time-limited court remand).

### III. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** reversing the decision of the Commissioner of Social Security and remanding for further administrative proceedings.  The Commissioner shall award Plaintiff benefits effective as of July 12, 2011, but payment shall be deferred until conclusion of the administrative proceedings ordered herein.

**IT IS FURTHER ORDERED** that within 120 days from the date of this Order (or such later time as the parties mutually agree), an ALJ shall hold an administrative hearing and receive additional evidence to determine whether benefits should be awarded

for a closed period or should be continuing.  If benefits are awarded for a closed period, the end date shall be no earlier than February 15, 2013.  The ALJ shall issue a new decision that is consistent with the applicable law as set forth in this Order.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly.

Dated this 30th day of June, 2016.

_____

Eileen S. Willett
United States Magistrate Judge

- 21 -